## Case No. 1,650.

### BOOTHE v. BROOKS et al.

[12 N. B. R. (1875) 398;[1] 1 N. Y. Wkly. Dig. 125.]

#### District Court, N. D. Mississippi.

BANKRUPTCY—ACT OF 1867—CONSTRUCTION— FRAUDULENT CONVEYANCE.

1. The phrase of 35th section [Act March 2, 1867; 14 Stat. 534], "in fraud of the provisions of this act," construed.

2. If a mortgagor conveys in fraud of the bankrupt law, actual notice must be brought home to the mortgagee who has taken conveyance under circumstances promising material relief and assistance to the debtor, and apparently for that purpose.

3. The new rule controls cases in which conveyance was made before the passage of the amendatory act, provided there was no judicial passage on the conveyance previous to the amendment.

[Bill by J. B. Boothe, assignee in bankruptcy of Hightower & Butler, against Brooks, Neely & Co. Dismissed.]

HILL, District Judge. This cause is submitted upon bill, answer, exhibits, and proof. The purpose of the bill is to have set aside and declared void a deed of trust executed by said Hightower & Butler, bankrupts, on the 31st day of January, 1874, by which certain real estate described in the bill belonging to said Hightower individually, and certain other real estate belonging to the firm of Hightower & Butler, was conveyed in trust to secure the payment of the indebtedness then due from them to the defendants of three thousand six hundred and eighty-eight dollars and fifty-two cents, being a balance due from the mercantile transactions between the parties for a number of years. The bill alleges that said Hightower & Butler were, at the time of this conveyance, insolvent, and that said conveyance was made with the intention to give to defendants a preference over their other creditors, and to defeat the object of the bankrupt law, and in fraud thereof; that at the same time defendants had cause to believe, and knew of the insolvency of Hightower & Butler, and of the intention and purpose of said conveyance as stated, and accepted the same in fraud of the provisions of the bankrupt law; which defendants, by their answer, deny. The proof shows that at that

---

[1] [Reprinted from 12 N. B. R. 398, by permission.]

time Hightower & Butler were commercially insolvent, if not legally so, and also shows that defendants then had knowledge of such facts as constitute such commercial insolvency, that is, that they were unable to meet their commercial obligations as they fell due in the usual course of business. Few, even among commercial men, draw the distinction between commercial and legal insolvency, and I take it for granted that defendants do not make this distinction.

The main question to be determined is, did defendants at the time the conveyance was made for their benefit, have cause to believe that Hightower & Butler were insolvent, and did they then know it was in fraud of the provisions of the bankrupt act? If they did, then the conveyance must be declared void under the provisions of the 35th section of the act, but if these two facts did not then exist, the conveyance must be upheld. The existence of the first fact I am satisfied did exist. The second fact necessary to exist to avoid the deed being denied by the answer, throws the burthen of proof for its establishment upon the complainant.

The meaning of the words, "In fraud of the provisions of this act," is anything which will give a preference to one creditor over another (except those who at the time have an existing lien or priority), and which will prevent an equal distribution of, and participation in, the assets of the bankrupts among their general creditors.

The proof shows that the property conveyed was encumbered by prior conveyances, amounting to some eight thousand to ten thousand dollars, which was then known to defendants, which was the principal indebtedness then known to defendants other than that due them. The proof further shows that when the negotiations for this security was being had, Hightower stated to J. C. Neely, one of the defendants, that the firm owed about ten thousand dollars, and owned assets worth fifty thousand dollars. Hall, the attorney who drew the trust deed, states in his testimony that Hightower then stated to him that he had plenty to pay all his debts, or twice enough for that purpose. The trust only conveyed the real estate of the firm, leaving the stock of goods then on hands, together with the debts due them, amounting nominally to a large sum, which was unencumbered, from anything appearing in the evidence. Time was extended on the indebtedness due defendants, on one thousand dollars, to April 1st; on thirteen hundred and forty-four dollars and twenty-six cents, to November 1st, 1874, and on thirteen hundred and forty-four dollars and twenty-six cents, to January 1st, 1875. It was further promised by defendants that they would make further advances to Hightower & Butler to enable them to carry on their business, thus postponing the time of payment on much the larger amount until

the cotton crop would come in, from which it was reasonable to presume a considerable amount might be realized from the indebtedness due Hightower & Butler. It often happens among commercial men, that an extension of time for payment enables them to realize from their means, whether stock in trade or debts due them, by which they are enabled to escape bankruptcy and ruin, and when made in good faith for that purpose and not with the intention to obtain a preference over other creditors, or to prevent the debtor's estate from being distributed under the bankrupt law, and especially where the party for whose benefit the conveyance is made has reason to believe, and does believe, that the debtor has sufficient means to discharge his other debts,—I am of opinion a conveyance made to secure such extended indebtedness so made, and free from any fraud or intention to obtain a preference over other creditors, or to defeat the purpose and object of the bankrupt law, is not obnoxious to its provisions as amended by the act of June 22d, 1874 [18 Stat. 180, § 10], which was evidently intended as a modification of the law in relation to conveyances before that time, held void under the law then in force. This was done to relieve the honest debtor who was striving to extricate himself from his embarrassments and meet his liabilities, and was no doubt induced from the large number of this class, who, although owning assets nominally greatly in excess of their liabilities, could not, owing to the financial crisis of 1873, realize them. This amendment, however, does not change the law where the intention is to obtain a preference over other creditors, and thus defeat the object and purpose of the bankrupt law, that is, equality among the creditors of the debtor's estate.

But it is insisted that this amendment does not embrace or apply to this conveyance, as it was made before that enactment. The first case decided by me under this amendment, was a motion made by defendant's counsel to set aside the adjudication of bankruptcy of these bankrupts, on the ground of the retroactive operation provided in this amendment. I then decided that as the decree of bankruptcy had been made, and rights vested under it, that the congress had no power to disturb the decree, but in all cases where rights had not been fixed by the decrees of the court, that all the modifications contained in the act would be given the retroactive effect. And, hence, where conveyances were good at common law, and only void under the provisions of the bankrupt act, it was competent for congress to repeal the law, modify, or change it, and such change will be enforced by the courts in all cases where rights were not, before the enactment, fixed and settled. The validity of this conveyance not having been declared by the proper tribunal before the

passage of the amendment, and not being void by the common law, must be tested by the law as amended.

Without further comment upon the pleadings and proof, I am satisfied that the proof fails to show that the defendants at the time they obtained this conveyance knew that the conveyance was in fraud of the provisions of the act as already defined, and for the want of the establishment of this fact, the prayer of the bill must be refused and the conveyance held valid.